UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'  JS-6

| Case No. | 5:15-cv-00588-CAS(Ex) | Date | August 24 , 2015 |
|---|---|---|---|
| Title | ALPHONSO BENTON ET AL. V. CYNTHIA MORENO-BENTON ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Thomas Brown, VI | Patricia Teunisse |
| | Craig Holden |

**Proceedings:** DEFENDANT PRIMECARE'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT (dkt. 26, filed July 6, 2015)

DEFENDANTS CYNTHIA MORENO-BENTON, KRISTI KIEHL, DANA GOODBEAU, AND CHINO HILLS FAMILY MEDICAL GROUP'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT (dkt. 29, filed July 21, 2015)

## I. INTRODUCTION

On March 4, 2015, plaintiff Alphonso Benton, M.D. ("Benton"), an individual, and Alphonso Benton, M.D., doing business as Compcare Medical, Inc. ("Compcare"),[1] filed this action against defendants Cynthia Moreno-Benton, D.O. ("Moreno-Benton"), Kristi Kiehl, PA-C, MSPA ("Kiehl"), Dana Goodbeau ("Goodbeau"), Moreno Family Medical and Associates, Inc., doing business as Chino Hills Family Medical Group ("Chino Family Medical"), Primecare Medical Group of Chino Valley, Inc. ("Primecare"), and

---

[1] While plaintiff purports to bring this action on behalf of plaintiffs Alphonso Benton, M.D., an individual, and Alphonso Benton, M.D., doing business as Compcare Medical, Inc., the Court fails to understand why the plaintiff is not a single entity— namely, "Alphonso Benton, M.D., as an individual and doing business as Compcare Medical, Inc."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**    'O'    JS-6

| Case No. | 5:15-cv-00588-CAS(Ex) | Date | August 24 , 2015 |
|---|---|---|---|
| Title | ALPHONSO BENTON ET AL. V. CYNTHIA MORENO-BENTON ET AL. | | |

Does 1-20 in San Bernardino County Superior Court. Dkt. 1.[2] Defendant Primecare removed the action to this court on the basis of federal question jurisdiction on March 26, 2015. Id.

The original complaint asserted the following ten claims: (1) breach of contract in violation of 42 U.S.C. § 1981; (2) breach of written contract; (3) misappropriation of trade secrets in violation of California's Uniform Trade Secrets Act, Cal. Civ. Code §§ 3426 et seq. ("CUTSA"); (4) intentional interference with prospective economic advantage; (5) breach of fiduciary duty; (6) breach of duty of loyalty; (7) conspiracy; (8) conversion; (9) defamation; and (10) unfair competition.[3]

On April 2, 2015, defendant Primecare filed a motion to dismiss the claims asserted against it in the original complaint. Dkt. 7. On April 16, 2015, the Chino Family Medical defendants filed a motion to sever and remand plaintiffs' state law claims (claims 2 through 10 in the original complaint). Dkt. 13. In an order dated May 18, 2015, this Court granted without prejudice Primecare's motion to dismiss plaintiffs' first claim for breach of contract in violation of 42 U.S.C. § 1981. Dkt. 23. The Court further granted plaintiffs leave to file to file a first amended complaint by June 17, 2015 addressing the deficiencies cited in the Court's May 18, 2015 order. Id. The Court also denied without prejudice the Chino Family Medical defendants' motion to sever and remand plaintiffs' state law claims.

On June 17, 2015, plaintiffs filed their first amended complaint ("FAC") in the instant action. The first amended complaint asserts the following eight claims: (1) breach of contract in violation of 42 U.S.C. § 1981; (2) breach of written contract; (3) misappropriation of trade secrets in violation of CUTSA; (4) intentional interference with prospective economic advantage; (5) breach of fiduciary duty; (6) breach of duty of

---

[2] The Court refers to Moreno-Benton, Kiehl, Goodbeau, and Chino Family Medical collectively as the "Chino Family Medical defendants."

[3] The original complaint asserted claims one and two solely against Primecare, claim five solely against Moreno-Benton, and claim six solely against Kiehl and Goodbeau. The remaining claims were asserted against all defendants.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'  JS-6

| Case No. | 5:15-cv-00588-CAS(Ex) | Date | August 24 , 2015 |
|---|---|---|---|
| Title | ALPHONSO BENTON ET AL. V. CYNTHIA MORENO-BENTON ET AL. | | |

loyalty; (7) defamation; and (8) unfair competition. Plaintiffs assert claims one and two solely against Primecare; claim five solely against Moreno-Benton; claim six solely against Kiehl and Goodbeau; claim 4 against all defendants; and claims three, seven, and eight against all defendants except Primecare.

On July 6, 2015, defendant Primecare filed a motion to dismiss the claims asserted against it pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 26. Plaintiffs opposed this motion on July 20, 2015, dkt. 28, and Primecare replied on August 10, 2015, dkt. 33. On July 21, 2015, the Chino Family Medical defendants filed a motion to dismiss the claims asserted against them pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 29. Plaintiffs opposed this motion on August 3, 2015, dkt. 31, and the Chino Family Medical defendants replied on August 10, 2015, dkt. 34. The Court held a hearing on August 24, 2015. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. BACKGROUND

This action involves a business dispute arising from the dissolution of a marriage between two doctors who, until late 2014, jointly operated a medical practice.

Plaintiff Alphonso Benton, an African-American, is a licensed physician who operates a medical practice, plaintiff Compcare, located in Chino Hills, California. FAC ¶¶ 1-2. Benton and Compcare provide family health and medical services. Id. ¶ 15. Defendant Cynthia Moreno-Benton, a Caucasian-American and licensed physician, was an officer and employee of Compcare until December 1, 2014. Id. ¶ 3. Benton and Moreno-Benton were married for over thirteen years, until Moreno-Benton filed for divorce on or about September 14, 2014. Id. ¶ 16.

Defendant Kristi Kiehl, a Caucasian-American and physician's assistant, was a "key employee" of Compcare until submitting her letter of resignation on October 24, 2014. Id. ¶ 4. Defendant Dana Goodbeau, a Caucasian-American and "medical biller/office floater," was a "critical employee" of Compcare before submitting her letter of resignation on December 17, 2014. Id. ¶ 5. Defendant Chino Hills Family Medical Group is a California corporation that was incorporated by Moreno-Benton and registered with the California Secretary of State on August 25, 2014. Id. ¶ 6.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**         'O'    JS-6

| Case No. | 5:15-cv-00588-CAS(Ex) | Date | August 24 , 2015 |
|---|---|---|---|
| Title | ALPHONSO BENTON ET AL. V. CYNTHIA MORENO-BENTON ET AL. | | |

Defendant Primecare is an Independent Physician Association ("IPA") with its principal place of business in Chino, California. See id. ¶¶ 6, 24. On or about April 1, 2010, Primecare and Compcare entered into a written Primary Care Physician Services Agreement (the "Agreement" or "April 2010 Agreement"), whereby Primecare agreed to make monetary payments—known as "Capitation Payments"—to Compcare for the provision of medical services to patients under the federal Medicare Advantage program. Id. ¶¶ 8, 38.[4]

Plaintiffs allege that, at all relevant times, Moreno-Benton, Kiehl, Goodbeau, and Primecare were agents of Chino Family Medical. Id. ¶ 9. In the alternative, plaintiffs allege that Moreno-Benton, Kiehl, Goodbeau, and Primecare were engaged in a conspiracy with Chino Family Medical to unlawfully interfere with and destroy Plaintiffs' business relationships, and destroy Plaintiffs' ability to do business." Id. ¶ 10.

Specifically, plaintiffs allege that, while still employed by Compcare, Moreno-Benton and Kiehl secretly incorporated Chino Family Medical and conspired with Primecare "for the solicitation and transfer of as many Primecare patients as possible from Compcare to [Chino Family Medical] as soon as Moreno-Benton and [K]iehl submitted their resignations from Compcare [in October 2014]." Id. ¶ 18. Plaintiffs further allege that, in or about July 2014, Moreno-Benton and unnamed defendants solicited the key employees of Compcare for employment with Chino Family Medical by offering them higher pay. Id. ¶ 20. Plaintiffs allege that the amount that Compcare paid its employees is "confidential and sensitive corporate information." Id.

Plaintiffs further allege that, prior to announcing their resignations from Compcare, Moreno-Benton, Kiehl, Goodbeau, and Chino Family Medical converted "virtually all" of Compcare's information for their own use. Id. ¶ 24. Specifically, plaintiffs allege that

---

[4] "Medicare Advantage . . . is a federal program designed to permit persons eligible for Medicare to enroll in private insurance plans, including health maintenance organizations (HMOs). The Medicare program pays all or most of the premium for that insurance in lieu of paying Medicare benefits directly to service providers." Yarick v. PacifiCare of California, 179 Cal. App. 4th 1158, 1163 (2009).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 5:15-cv-00588-CAS(Ex) | Date | August 24 , 2015 |
| Title | ALPHONSO BENTON ET AL. V. CYNTHIA MORENO-BENTON ET AL. | | |

the Chino Family Medical defendants "secretly retrieved and copied confidential and proprietary patient contact information, patient medical records, Compcare and patient billing records, contracts with Primecare and other Independent Physician Associations ('IPA's') and medical exchanges, business forms that had been developed by Compcare, and other confidential, proprietary and trade secret information." Id.

In or about November 2014, plaintiffs allege that Moreno-Benton and Kiehl began soliciting plaintiffs' patients by sending letters and pamphlets to patients using Compcare's confidential mailing list. Id. ¶ 27. That same month, the Chino Family Medical defendants allegedly made a public posting on the Facebook page for "Chino Hills Family Medical Group," in which they accused plaintiffs of terminating Moreno-Benton's employment, and encouraged Compcare patients to follow them to their new medical practice. Id. ¶ 30. Further, in December 2014, plaintiffs allege that Moreno-Benton or other defendants submitted a review to Yelp falsely stating that plaintiff Benton, inter alia, "misdiagnoses patients and holds them over a barrel to bleed their wallets," and encouraging plaintiffs' patients to transfer to Chino Family Medical. Id. ¶ 33. According to plaintiffs, Chino Family Medical began seeing patients on January 12, 2015. Id. ¶ 28.

Further, plaintiffs allege that Primecare has breached the aforementioned Agreement to make capitation payments to Compcare. Plaintiff states that Exhibit B to the April 2010 Agreement defines "capitation payment" as the "payment made by Group [Primecare] to Provider [Compcare] for those Primary Care Services to be provided by Provider to Physician Members." Id. ¶ 39.[5] Section 6.6 of the April 2010 Agreement provides:

---

[5] Plaintiffs have not proffered to the Court a copy of the April 2010 Agreement or its accompanying exhibits. Accordingly, all citations to the Agreement and its exhibits are based upon portions of the Agreement as excerpted in plaintiffs' first amended complaint.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'    JS-6

| Case No. | 5:15-cv-00588-CAS(Ex) | Date | August 24 , 2015 |
|---|---|---|---|
| Title | ALPHONSO BENTON ET AL. V. CYNTHIA MORENO-BENTON ET AL. | | |

> Upon termination of this Agreement, Provider [Compcare] agrees to continue to render, and Group [Primecare] shall remain liable to pay Provider (at the rated [sic] provided for in Exhibit B, as payment in full less applicable Copayments) for the render of [sic], Primary Care Services, to a Physician Member . . . until the Primary Care Services being rendered to the Physician Member by Provider are completed, or until Group makes reasonable and medically appropriate provision for the assumption of such services by another provider, whichever shall occur first.

Id. ¶ 40. According to plaintiffs, this language obligated Primecare to continue making "the full Capitation Payment to Compcare until such time as [Chino Family Medical] began seeing patients on or about January 12, 2015." Id.

Plaintiffs allege that Primecare breached the April 2010 Agreement by "drastically reducing" its capitation payment to Compcare in December 2014, "even though Section 6.6 of the April 2010 Agreement required Compcare to continue rendering medical services to Medicare Advantage patients, and likewise required Primecare *to continue paying Compcare the full Capitation Payment amount* (until such time as [Chino Family Medical defendants] began seeing their patients at [Chino Family Medical]." Id. at ¶ 43. Specifically, plaintiffs allege receipt of $27,293.70 in capitation payments from Primecare on November 18, 2014, but only $7,733.56 on December 17, 2014. Id. ¶ 44. Further, plaintiffs allege that Primecare conspired to divert December 2014 capitation payments to the Chino Family Medical defendants, even though Chino Family Medical had not yet begun serving Medicare Advantage patients. Id. In plaintiffs' view, "the circumstances under which Primecare failed to pay the Capitation Payments to Compcare as required under the Agreement . . . permit an inference that Primecare subjected Plaintiff Benton (an African-American) to differential treatment on the basis of his race." Id. ¶ 45.

Plaintiffs further allege that defendant Primecare "retaliated[d] and discriminate[d] against plaintiff by threatening in an April 2015 letter to cancel Primecare's written contract with plaintiff[s]" following plaintiffs' filing of this lawsuit in March 2015. Id. at 14. More specifically, plaintiffs allege that Primecare's April 2015 letter is the third in a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'  JS-6 |
|---|---|---|---|
| Case No. | 5:15-cv-00588-CAS(Ex) | Date | August 24 , 2015 |
| Title | ALPHONSO BENTON ET AL. V. CYNTHIA MORENO-BENTON ET AL. | | |

series of such correspondences that Compcare has received since December 2010. At that time, by letter dated December 29, 2010, plaintiff Benton and defendant Moreno-Benton, then still married and practicing medicine together, informed Primecare of their need to cancel the "exclusive provider" status they had with Primecare in order to increase their patient base by affiliating with other IPA's. Id. ¶ 47. According to plaintiffs, Primecare did not respond to this December 2010 letter. Id. ¶ 48.

Plaintiffs next allege that by memorandum dated December 14, 2011 and addressed to "All Primecare Chino Exclusive PCPs [Primary Care Physicians]" ("December 2011 Memo"), Primecare stated that on November 11, 2011, it had implemented a policy whereby "any exclusive provider that violates the exclusivity agreement" would forfeit its "bonus distribution." Id. The December 2011 Memo further states that a violating provider's contract "will be in jeopardy of termination." Id.

Plaintiffs further aver that by letter dated January 31, 2012 and addressed to plaintiff Benton and defendant Moreno-Benton ("January 2012 Letter"), Primecare stated that "[i]t has come to [their] attention" that Compcare was affiliated with medical groups other than Primecare." Id. ¶ 49. The January 2012 Letter further states that as a result of Compcare's "violation of exclusive status[, its] bonus distribution will be forfeited until [its] violation is corrected." Id. ¶ 49; see also id. Exhibit C. The letter also requests that Compcare indicate "the steps [it is] taking to correct these violations by March 1, 2012," and warns that Compcare's "failure to respond may result in termination" of the April 2010 Agreement. Id. Notwithstanding the language in the December 2011 Memo and January 2012 Letter, Primecare never terminated the April 2010 Agreement. Id. ¶ 50, 57.

Thereafter, plaintiffs allege that by letter dated April 28, 2015 and addressed to plaintiff Benton ("April 2015 Letter"), Primecare stated that "[i]t has come to [their] attention" that plaintiff Benton was "listed as an active, participating PCP, accepting new patients" with numerous IPA's in violation of the April 2010 Agreement's exclusivity provision. Id. ¶ 52; see also id. Exhibit D. The April 2015 Letter further states that it "serve[s] as notice to [Benton] that [he is] in breach" of the exclusivity provision of the April 2010 Agreement, and accordingly "ha[s] thirty (30) days from the receipt of th[e] letter to cure this breach or [he] will be subject to further action up to and including termination." Id. Primecare has not terminated the April 2010 Agreement, which currently remains in effect. However, plaintiffs state they are "informed and believe that the only reason Primecare has not actually terminated its Agreement with Compcare as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL     'O'    JS-6

| Case No. | 5:15-cv-00588-CAS(Ex) | Date | August 24 , 2015 |
|---|---|---|---|
| Title | ALPHONSO BENTON ET AL. V. CYNTHIA MORENO-BENTON ET AL. | | |

threatened in its April 28, 2015 letter is that Plaintiffs' attorney has already informed Primecare's attorneys in writing that Primecare's threats as set forth in the . . . letter constitute retaliation and race discrimination, which would destroy his business reputation." Id. ¶ 57.

### III. LEGAL STANDARD

#### A. Motion to Dismiss

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.' " Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Polic Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'  JS-6 |
|---|---|---|---|
| Case No. | 5:15-cv-00588-CAS(Ex) | Date | August 24 , 2015 |
| Title | ALPHONSO BENTON ET AL. V. CYNTHIA MORENO-BENTON ET AL. | | |

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

### III. DISCUSSION

    **A.  Defendant Primecare's Motion to Dismiss**

        **1.  Central District Rule 7-3**

As a preliminary matter, plaintiffs contend that the Court should deny defendant Primecare's motion because Primecare did not comply with the meet and confer requirements of Local Rule 7-3. Opp'n Mot. Dismiss at 2-5. Local Rule 7-3 requires counsel contemplating the filing of a motion to contact and discuss the motion with opposing counsel at least seven days prior to the filing of the motion. C.D. Cal. L.R. 7–3.

Plaintiffs contend that Primecare "*never* indicated to Plaintiffs . . . that [it] was contemplating a Motion to Dismiss Platiniffs' First Amended Complaint." Opp'n Mot. Dismiss at 3. Instead, plaintiffs argue, Primecare's counsel wrote plaintiffs' counsel and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'  JS-6

| Case No. | 5:15-cv-00588-CAS(Ex) | Date | August 24 , 2015 |
|---|---|---|---|
| Title | ALPHONSO BENTON ET AL. V. CYNTHIA MORENO-BENTON ET AL. | | |

stated, "[Primecare] has authorized me to file a cross complaint . . . However, in an effort to settle[] all disputes between the parties, I have been authorized to settle on the following terms . . . please get back to me by Thursday, July 2 with your client's response to the above offer." Opp'n Mot. Dismiss at 4; Declaration of Thomas Brown ("Brown Decl.") ¶ 4. Plaintiffs argue that Primecare's correspondence led them to believe that if a settlement was not reached, Primecare would file an answer to the FAC, along with a cross-complaint. Opp'n Mot. Dismiss at 4; Brown Decl. ¶ 5. Accordingly, plaintiffs characterize defendant Primecare's alleged failure to comply with Rule 7-3 as "not de minimus," but rather "calculated, intentional, [and] cavalier." Opp'n Mot. Dismiss at 4.

Defendants do not contest plaintiffs' assertion that Primecare failed to specifically discuss its motion to dismiss plaintiffs' first amended complaint with opposing counsel at least seven days prior to filing the motion. Rather, defendants argue that it is "disingenuous for Plaintiffs' counsel to represent they were 'deprived' of an opportunity to meet and confer on the [claims in the FAC] when they seek to reassert the same allegations that Primecare has disputed since at least April 2, 2015," when Primecare sent plaintiffs' counsel an email outlining perceived deficiencies in the original complaint and then conducted a telephonic meet and confer with plaintiffs' counsel shortly thereafter. Reply at 2, 5. Defendants argue, therefore, that "[p]laintiffs' counsel were well aware of PrimeCare's dispute with Plaintiffs' allegations and its intention to seek the Court's dismissal absent curative amendment." Reply at 5.

The Court concludes that while Primecare technically failed to meet and confer with plaintiffs before filing the present motion, such a failure appears to be inconsequential, as Primecare believes that the FAC contains the same substantive deficiencies as the original complaint. It is undisputed that the parties met and conferred to discuss Primecare's assessment of these deficiencies prior to Primecare's filing a motion to dismiss the original complaint. The Court's review of the allegations in the FAC indicates that they are substantially similar to those in the original complaint. Accordingly, while there was technically no meet and confer, it does not appear that a meet and confer would have had any purpose. Therefore, the Court declines to deny the instant motion on the basis of noncompliance with Local Rule 7-3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'    JS-6 |
|---|---|---|---|
| Case No. | 5:15-cv-00588-CAS(Ex) | Date | August 24 , 2015 |
| Title | ALPHONSO BENTON ET AL. V. CYNTHIA MORENO-BENTON ET AL. | | |

**2.      Breach of Contract in Violation of 42 U.S.C. § 1981 (Claim One)**

Plaintiffs assert two claims for breach of contract against Primecare: breach of contract in violation of 42 U.S.C. § 1981 (claim one), and breach of written contract (claim two). Because plaintiffs' claim for violation of section 1981 constitutes the sole basis for the Court's exercise of subject matter jurisdiction over this action, the Court will first address this claim.

Section 1981 prohibits racial discrimination that interferes with the making and enforcement of contracts and the exercise of other rights under the law. See 42 U.S.C. § 1981; St. Francis Coll. v. Al-Khazraji, 481 U.S. 504, 409 (1987). To state a claim under § 1981, a plaintiff must plead the following elements: "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." Jefferson v. City of Fremont, No. C-12-0926 EMC, 2012 WL 1534913, at *2 (N.D. Cal. Apr. 30, 2012). "Proof of intent to discriminate is necessary to establish a violation of section 1981." Imagineering, Inc. v. Kiewit Pac. Co., 976 F.2d 1303, 1313 (1992), abrogation in other respects recognized by Newcal Indus., Inc. v. Ikon Office Solution, 513 F.3d 1038, 1055 (9th Cir. 2008). "Thus, while the federal rules require only that plaintiffs aver intent generally, Fed. R. Civ. P. 9(b), under section 1981 they must at least allege facts that would support an inference that defendants intentionally and purposefully discriminated against them." Id. (emphasis added).

Plaintiffs allegations regarding an alleged section 1981 violation read, in relevant part:

> 51. [A]fter Defendants DIEHL and MORENO-BENTON – *both Caucasian-Americans* – tendered their resignation letters to COMPCARE on October 24 and October 27, 2014, respectively, and after PRIMECARE became aware of those resignations when Plaintiff BENTON (an African-American) informed PRIMECARE of the resignations, in writing, on or about October 29, 2014, Defendant PRIMECARE promptly breached its Agreement with COMPCARE by drastically

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'  JS-6 |
|---|---|---|---|
| Case No. | 5:15-cv-00588-CAS(Ex) | Date | August 24 , 2015 |
| Title | ALPHONSO BENTON ET AL. V. CYNTHIA MORENO-BENTON ET AL. | | |

reducing its Capitation Payment to COMPCARE in December 2014, even though Defendants MORENO-BENTON, DIEHL, and MORENO FAMILY MEDICAL AND ASSOCIATES INC. were not even set up to see patients in December 2014, and even though Section 6.6 of the Agreement required COMPCARE (the "Provider") *to continue rendering medical services to Medicare Advantage patients, and likewise required PRIMECARE to continue paying COMPCARE the full Capitation Payment amount* (until such time as Defendants MORENO-BENTON and DIEHL began seeing their patients at MORENO FAMILY MEDICAL AND ASSOCIATES INC.).

52. Moreover, after (1) Defendants DIEHL and MORENO-BENTON – both Caucasian-Americans – resigned from COMPCARE in later 2014, and after (2) Plaintiff BENTON (an African-American) initially filed this lawsuit on March 4, 2015 in the Superior Court of California for the County of San Bernardino against the named Defendants (including Defendant PRIMECARE), PRIMECARE suddenly – by letter dated April 28, 2015 addressed to Plaintiff BENTON – resurrected its threat to terminate its April 2010 contract with COMPCARE for alleged noncompliance with the "exclusive provider" provision in the Agreement. PRIMECARE's April 28, 2015 letter (a true and correct copy of which is attached to this Complaint as Exhibit "D") – claims that this fact "has come to our attention," even though the December 29, 2010 letter from Plaintiff BENTON and Defendant MORENO-BENTON informed PRIMECARE of this fact over *four and a half years ago*, and even though PRIMECARE's own January 31, 2012 letter (*over two and half years ago*) to Plaintiff BENTON and Defendant MORENO-BENTON – in which PRIMECARE also states that this fact has "come to our attention" – demonstrates that PRIMECARE was perfectly content to make its required Capitation Payments to COMPCARE under the Agreement, and to continue its professional contractual relationship with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 5:15-cv-00588-CAS(Ex) | Date | August 24 , 2015 |
| Title | ALPHONSO BENTON ET AL. V. CYNTHIA MORENO-BENTON ET AL. | | |

COMPCARE pursuant to the Agreement, for the calendar years 2012, 2013, and the vast majority of 2014 – until, that is, Defendants DIEHL and MORENO-BENTON – both Caucasian-Americans – resigned from COMPCARE in late 2014.

53. In other words, as long as the officers of COMPCARE consisted of at least one Caucasian-American, PRIMECARE had no problem making its required Capitation Payments to COMPCARE under the Agreement, and to continue its professional contractual relationship with COMPCARE pursuant to the Agreement, for the calendar years 2012, 2013, and the vast majority of 2014.

54. This is demonstrated by the fact that in 2012, 2013, and the vast majority of 2014 – when both Plaintiff BENTON (an African-American), and Defendant MORENO-BENTON (a Caucasian-American) – were officers of, and worked at, COMPCARE – Defendant PRIMECARE continued to make the required Capitation Payments to COMPCARE, and made no attempts to terminate its Agreement with COMPCARE.

55. However, as soon as Defendants DIEHL and MORENO-BENTON – both Caucasian-Americans – resigned from COMPCARE in late 2014, leaving only Plaintiff BENTON (an African-American) to manage and operate COMPCARE – PRIMECARE immediately breached its Agreement with COMPCARE by drastically reducing its Capitation Payment to COMPCARE in December 2014, even though Defendants MORENO-BENTON, DIEHL, and MORENO FAMILY MEDICAL AND ASSOCIATES INC. were not even set up to see patients in December 2014.

56. Further demonstrating PRIMECARE's racial bias against Plaintiff BENTON is the fact that in 2012, 2013, and the vast

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'    JS-6

| Case No. | 5:15-cv-00588-CAS(Ex) | Date | August 24 , 2015 |
|---|---|---|---|
| Title | ALPHONSO BENTON ET AL. V. CYNTHIA MORENO-BENTON ET AL. | | |

majority of 2014 – when both Plaintiff BENTON (an African-American), and Defendant MORENO-BENTON (a Caucasian-American) – were officers of, and worked at, COMPCARE – Defendant PRIMECARE made no attempts to terminate its Agreement with COMPCARE, notwithstanding its prior January 31, 2012 letter to COMPCARE concerning bonus forfeiture. However, soon after Defendants DIEHL and MORENO-BENTON (both Caucasian-Americans) resigned from COMPCARE in late 2014, followed by Plaintiff BENTON's filing of this lawsuit in March 2015, PRIMECARE promptly resurrected it [sic] long-dormant, never-enforced, two and a half year old threat to terminate its Agreement with COMPCARE. **What changed between January 31, 2012 (the date of PRIMECARE's initial letter to COMPCARE) and PRIMECARE's April 28, 2015 letter?**

    a. On January 31, 2012, both Plaintiff BENTON (an African-American) and Defendant MORENO-BENTON (a Caucasian-American) managed and operated COMPCARE. By April 28, 2015, Defendant MORENO-BENTON had resigned from COMPCARE, leaving only Plaintiff BENTON (an African-American).

    b. In late 2014, Defendants DIEHL and MORENO-BENTON – both Caucasian-Americans – resigned from COMPCARE.

    c. In March 2015, Plaintiff BENTON filed this lawsuit against the named Defendants, including PRIMECARE.

FAC ¶¶ 51-56 (emphases in original).

    For purposes of the instant motion, the Court's primary inquiry is whether plaintiffs in their FAC sufficiently allege facts that would support an inference that Primecare intentionally discriminated against plaintiff Benton on account of his race. In

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'  JS-6

| Case No. | 5:15-cv-00588-CAS(Ex) | Date | August 24 , 2015 |
|---|---|---|---|
| Title | ALPHONSO BENTON ET AL. V. CYNTHIA MORENO-BENTON ET AL. | | |

their FAC, plaintiffs highlight two alleged sets of "circumstances" that purportedly support such an inference. Specifically, plaintiffs assert that the circumstances under which Primecare reduced its capitation payment to Compcare between November 2014 and December 2014, and the circumstances under which Primecare "retaliated against plaintiff Benton [by sending the April 2015 Letter] for filing this lawsuit in the first place," permit "an inference that Primecare subjected plaintiff Benton to differential treatment on the basis of race." FAC ¶ 46; see id. ¶¶ 47-57. As explained in greater detail below, the Court disagrees.

The first of these two sets of circumstances—i.e., the reduction of Primecare's capitation payment following defendant Moreno-Benton's resignation from Compcare—was also detailed in plaintiffs' original complaint. See Orig. Compl. ¶ 43. Accordingly, the Court reviewed these allegations as pleaded in the original complaint in ruling on defendant Primecare's first motion to dismiss in the instant action. See May 28, 2015 Order, dkt. 23. In reviewing plaintiffs' allegations regarding Primecare's capitation payments, the Court concluded that plaintiffs failed in their original complaint to "allege a pattern of discrimination, actions indicating bias, or other facts that would support an inference that Primecare intentionally discriminated against Benton on the basis of his race." May 18, 2015 Order, dkt. 23 (citing Jones v. City of Los Angeles, 2009 WL 37116622, at *9 (C.D. Cal. Oct. 30, 2009) ("Here, Plaintiffs make only the most general conclusory allegations that Defendants' conduct was motivated by their race. Such conclusory allegations are insufficient."); and Jones v. Cmty. Redev. Agency, 733 F.2d 646, 649 & n.3 (9th Cir. 1984) (holding insufficient to support a § 1983 claim bare allegations of discrimination against African-Americans "unsupported by any facts as to how race entered into any decisions")).

Plaintiffs plead no new alleged facts in their FAC with respect to Primecare's reduction of its capitation payments in December 2014. Compare Orig. Compl. ¶ 43, with FAC ¶¶ 43, 51, 53-55. Rather, plaintiffs repeatedly emphasize that Primecare's reduction of the capitation payment followed the resignation of defendants Moreno-Benton and Diehl, both of whom were Caucasian-American. See, e.g., FAC ¶ 54 ("[I]n 2012, 2013, and the vast majority of 2014 —when both Plaintiff Benton (an African-American), and Defendant Moreno-Benton (a Caucasian-American)—were officers of, and worked at, Compcare—Defendant Primecare continued to make the required Capitation Payments to Compcare."); and FAC ¶ 55 ("[A]s soon as Defendants Diehl and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' JS-6 |
|---|---|---|---|
| Case No. | 5:15-cv-00588-CAS(Ex) | Date | August 24 , 2015 |
| Title | ALPHONSO BENTON ET AL. V. CYNTHIA MORENO-BENTON ET AL. | | |

Moreno-Benton—both Caucasian-Americans—resigned from Compcare in late 2014, leaving only Plaintiff Benton (an African-American) to manage and operate Compcare—Primecare immediately breached its Agreement with Compcare by drastically reducing its [December 2014] Capitation Payment.").

Notably, plaintiffs concede that a reduction in capitation payments from an IPA to a partnered medical provider is to be expected when patients actually leave the medical provider for an alternative provider. See Opp'n Mot. Dismiss at 7-8; FAC ¶ 4 ("Primecare was still contractually obligated under the Agreement to continue paying the full Capitation Payment *to Compcare* until such time as defendant Moreno Family Medical and Associates Inc. began seeing patients on or about January 12, 2015."). Plaintiffs' assertion that Primecare's payment reduction constituted a breach of the Agreement's express terms thus hinges upon their view that it came prematurely—i.e., in December 2014 and not January 2015, when defendant Moreno-Benton is alleged to have started seeing patients in her new practice. Accordingly, plaintiff Benton's section 1981 claim depends upon his assertion that Primecare's discriminatory intent can be inferred from the fact that its alleged breach followed the resignation of a Caucasian-American that left Compcare with only plaintiff Benton, an African-American, as the sole medical practitioner.

As with the original complaint, plaintiffs' pleaded facts regarding Primecare's allegedly improper reduction of capitation payments are insufficient to give rise to an inference of discriminatory intent. Compare Evans v. McKay, 869 F.2d 1341, 1345 (9th Cir. 1989) (finding racial animus sufficiently pleaded where plaintiffs alleged "overt acts coupled with some direct evidence" of animus, consisting of a statement that "whites have no rights" on a Native American reservation), with Mannery v. Miller, No. 07-315, 2007 WL 1395358, at *3 (W.D. Pa. May 9, 2007) (dismissing section 1981 claim where plaintiff failed to substantiate "broad allegations of racial discrimination" with facts showing treatment distinct from that given to non-minorities). Plaintiffs argue otherwise. They note that while defendant's conduct may have several plausible explanations, "[f]erreting out the most likely reason for . . . such actions is not appropriate at the pleading stage." Opp'n Mot. Dismiss at 11 (citing Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc., 648 F.3d 452, 458 (6th Cir. 2011)). Although this is an accurate statement of the law, plaintiffs' argument misses the mark. While "[t]he plausibility standard is not akin to a 'probability requirement,' [] it asks for more than a sheer

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O'   JS-6 |
|---|---|---|---|
| Case No. | 5:15-cv-00588-CAS(Ex) | Date | August 24 , 2015 |
| Title | ALPHONSO BENTON ET AL. V. CYNTHIA MORENO-BENTON ET AL. | | |

possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 677 (citing Twombly, 550 U.S. at 556).[6] Simply alleging improper reduction in capitations payments following a doctor resignation that reduces the ratio of Caucasian-American to African-American doctors in the group is not sufficient to support an inference that the alleged breach was made on account of race. See id. at 680 (finding complaint had "not 'nudged [defendant's] claims' of invidious discrimination 'across the line from conceivable to plausible'" (citing Twombly, 550 U.S. at 570)).[7]

---

[6] At oral argument, plaintiffs' counsel implored the Court to review the McDonnell Douglas test, as outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The McDonnell Douglas test "defines one method of proving a prima facie case of [employment] discrimination—proof from which a trier of fact can reasonably infer intentional discrimination." Robinson v. Adams, 847 F.2d 1315, 1316 (9th Cir. 1987) (citing Gay v. Waiters' & Dairy Lunchmen's Union, Local No. 30, 694 F.2d 531, 538 (9th Cir. 1982)). This test "is merely [one] sensible, orderly way to evaluate the evidence . . . on the critical question of discrimination," and "was never intended to be rigid, mechanized, or ritualistic." Id. (citing Furnco Construction Corp. v. Waters, 438 U.S. 567, 577 (1978)). Furthermore, the McDonnell Douglas test does not provide an appropriate means of evaluating the sufficiency of plaintiffs' pleadings regarding their section 1981 claim in the instant action, which revolves around alleged discrimination in the enforcement of an existing business contract and a business dispute arising thereunder, and not in the context of a dispute over employment. Accordingly, the Court need not apply the McDonnell Douglas test is assessing the sufficiency of plaintiffs' pleadings.

[7] In order to establish discriminatory intent, it is necessary to show that a defendant knew of the claimant's race when the defendant took the allegedly discriminatory action. Robinson, 847 F.2d at 1316 (noting that in the context of a section 1981 claim, "[a]n employer cannot intentionally discriminate . . . based on race unless the employer knows the applicant's race"). The Court notes that plaintiffs have not alleged any facts specifically establishing that defendant Primecare actually knew of plaintiff Benton's race, defendant Moreno-Benton's race, or defendant Diehl's race. However, allegations of such knowledge are arguably implied by plaintiffs' assertions that defendant Primecare's actions were motivated by race.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL     'O'    JS-6

| | | | |
|---|---|---|---|
| Case No. | 5:15-cv-00588-CAS(Ex) | Date | August 24 , 2015 |
| Title | ALPHONSO BENTON ET AL. V. CYNTHIA MORENO-BENTON ET AL. | | |

Furthermore, the Court notes that plaintiffs base their section 1981 claim regarding Primecare's allegedly improper reduction of capitation payments upon their reading of Section 6.6 of the Agreement, which reads as follows:

> <u>Upon termination of this Agreement</u>, Provider [Compcare] agrees to continue to render, and Group [Primecare] shall remain liable to pay Provider (at the rated [sic] provided for in Exhibit B, as payment in full less applicable Copayments) for the render of [sic], Primary Care Services, to a Physician Member . . . until the Primary Care Services being rendered to the Physician Member by Provider are completed, or until Group makes reasonable and medically appropriate provision for the assumption of such services by another provider, whichever shall occur first.

FAC ¶ 40 (emphasis added). Citing to this language in the Agreement, plaintiffs allege that "where – as here – Defendants Moreno-Benton and Diehl left the employ of Compcare, Primecare was still contractually obligated under the Agreement to continue paying the full Capitation Payment *to Compcare* until such time as defendant Moreno Family Medical and Associates Inc. began seeing patients on or about January 12, 2015." Id. Because plaintiffs have only provided the Court with select excerpts of the Agreement, it is difficult to ascertain the parties' respective obligations thereunder. Nonetheless, a reading of the plain language of Section 6.6 indicates that it only applies "[u]pon termination of th[e] Agreement." Id. Plaintiffs do not allege, however, that either party has actually terminated the Agreement at any point between its origination in April 2010 and the filing of the instant complaint. In fact, plaintiffs specifically allege just the opposite. See id. ¶ 57 ("Primecare has not actually terminated its Agreement with Compcare."). Therefore, plaintiffs' reliance upon language in Section 6.6 of the Agreement appears to be wholly misplaced.[8] Put simply, plaintiffs cannot sufficiently

---

[8] Although Primecare vigorously disputes plaintiffs' reading of the entirety of Section 6.6 of the Agreement, the Court, having found that plaintiffs failed to plead facts supporting the applicability of this provision, need not assess the effect or meaning of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'    JS-6

| Case No. | 5:15-cv-00588-CAS(Ex) | Date | August 24 , 2015 |
|---|---|---|---|
| Title | ALPHONSO BENTON ET AL. V. CYNTHIA MORENO-BENTON ET AL. | | |

plead a section 1981 claim for a racially motivated breach of Section 6.6 of the Agreement while simultaneously pleading that the factual predicate to this section's applicability—i.e., termination of the Agreement—has not occurred. Because plaintiffs have failed to plead a violation of Section 6.6 of the Agreement, it is unclear how one could infer that Primecare's allegedly premature reduction of capitation payments was made in contravention of the terms of the Agreement, let alone made with any retaliatory or discriminatory intent.

     The only additional allegations regarding their section 1981 claim that plaintiffs provide in their first amended complaint relate to three communications that Primecare sent plaintiffs in 2011, 2012, and 2015. See supra. In varying fashion, each communication notified Compcare that its admitted partnerships with competing IPA's constituted a breach of the Agreement's exclusivity requirement that could ultimately lead to the Agreement's termination. Id. According to plaintiffs, the circumstances surrounding Primecare's decision to send the third communication, which came about five months after defendant Moreno-Benton's resignation and one month after defendants filed the instant lawsuit, "demonstrat[es] Primecare's racial bias against Plaintiff Benton." FAC ¶ 56.

     Specifically, plaintiffs assert that "on the basis of race," Primecare "retaliate[d] and discriminate[d]" against plaintiff by "resurrect[ing] it[s] long-dormant, never-enforced, two and a half year old threat to terminate" the Agreement after plaintiffs' filed the instant lawsuit in March 2015. FAC at 14; id. ¶ 56. This argument is belied by plaintiffs' allegations regarding the 2011 and 2012 correspondences, which were sent well before the filing of any lawsuit—while Benton and Moreno-Benton were still married—and are largely identical in substance to the 2015 letter. In other words, any inference that Primecare made the decision to draft and send the April 2015 letter on account of plaintiff Benton's race is effectively undermined by the fact that Primecare sent two very similar communications while plaintiff Benton and defendant Moreno-Benton were still married and practicing together at Compcare. As defendants rightly argue, "Primecare's lawful attempts to enforce the exclusive provider clause by sending a warning letter in 2011, a warning letter in 2012, and a recent warning letter in 2015 do not constitute a breach of

---

such contested language.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      'O'   JS-6

| Case No. | 5:15-cv-00588-CAS(Ex) | Date | August 24, 2015 |
|---|---|---|---|
| Title | ALPHONSO BENTON ET AL. V. CYNTHIA MORENO-BENTON ET AL. | | |

contract by PrimeCare, nor do they establish even a remote inference of discriminatory intent." Mot. Dismiss at 7 (citations omitted). In all three of its communications—that is, twice while Benton and Moreno-Benton were both at Compcare, and once while only Benton remained—Primecare made clear that Compcare's alleged violation of the Agreement's exclusivity requirements could result in termination of the Agreement. See December 2011 Memo, FAC Exhibit B (noting Agreement "will be in jeopardy of termination"); January 2012 Letter, FAC Exhibit C (noting "failure to respond may result in termination" of the Agreement); April 2015 Letter, FAC Exhibit D (noting failure to cure the alleged breach will result in "further action up to and including termination"). Furthermore, in all three instances—again, both before and after Moreno-Benton's departure—Primecare did not ultimately terminate the Agreement. In other words, both Primecare's communications regarding the possibility of termination, and its ultimate actions following these communications, were essentially the same before and after Moreno-Benton's departure. Accordingly, and in light of plaintiffs' allegations, plaintiffs have failed to allege any facts that give rise to a rational inference that Primecare's actions were motivated by racial animus.

## IV.   CONCLUSION

In light of the foregoing, and because it does not appear that plaintiffs can allege a claim under section 1981, the Court **GRANTS WITH PREJUDICE** Primecare's motion to dismiss plaintiffs first claim for violation of section 1981. Because plaintiffs' first claim constitutes the exclusive basis for the Court's exercise of subject matter jurisdiction over this action, the Court declines to exercise supplemental jurisdiction over the seven remaining claims challenged by defendants Primecare and Chino Family Medical defendants, and **REMANDS** these claims to the San Bernardino County Superior Court.

IT IS SO ORDERED.

|  | 00 | : | 11 |
|---|---|---|---|
| Initials of Preparer | | | CMJ |